**Entered on Docket
August 16, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

**FILED**

AUG 15 2007

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-06-1459-KSP |
| JOHN PERPINAN, | Bk. No.   05-14638 |
| Debtor. | Adv. No.  06-01057 |
| JOHN PERPINAN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JEFFRY G. LOCKE, Trustee, | |
| Appellee. | |

Argued and Submitted on July 27, 2007
at Pasadena, California

Filed – August 15, 2007

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

_____

Before: KLEIN, SMITH and PERRIS,[**] Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (<u>see</u> Fed. R. App. P. 32.1), it has no precedential value. <u>See</u> 9th Cir. BAP Rule 8013-1.

[**]Hon. Elizabeth L. Perris, Chief Bankruptcy Judge for the District of Oregon, sitting by designation.

The debtor, John Perpinan, appeals from a judgment denying his discharge and compelling turnover of property of the estate. We AFFIRM.

FACTS

The debtor, a residential remodeling contractor, became involved in a contentious dispute with one of his clients, Janet Low, in 2001. As a result, in February 2003, Low filed a lawsuit against the debtor in state court for damages arising out of a construction contract. Low v. Perpinan, Sonoma County Superior Court Case No. SCV 231987. Low was represented by attorney Glenn Smith.

While the state court case was pending, a marital dissolution proceeding between the debtor and his former spouse was also proceeding. In connection with the marital dissolution proceeding, the family court ordered the debtor and his former spouse to sell their residence, pay certain debts, and divide the proceeds.

Pursuant to the state court order, the debtor and his former spouse sold their residence and closed escrow on July 12, 2005. After payment of the secured debt and certain other claims, the debtor received $121,750.84 in proceeds from the sale.

Of the $121,750.84, $10,000 was wired directly from the title company to the debtor's checking account. The balance ($111,750.84), was paid to the debtor through two checks drawn on the title company. The debtor took the larger of the two checks (in the amount of $109,279.45) to a branch of the title company's bank whereby the bank negotiated the check and issued to the

2

debtor several cashier's checks and money orders in small denominations. The debtor did not deposit any of these items into a bank account.

All the while, Low continued to prosecute her state court case against the debtor. Due to a lack of cooperation with Low, and a lack of compliance with court orders compelling the debtor to attend a deposition, Low filed a Motion for Terminating Sanctions. Low's motion was set for hearing on October 20, 2005.

On October 16, 2005, the debtor filed a chapter 7 case and scheduled Low as a disputed creditor. On the debtor's Schedule B, he scheduled as "Cash on Hand" $48,000 in sale proceeds from the sale of his residence. On the debtor's Schedule C, he claimed the $48,000 in sale proceeds as exempt pursuant to California Code of Civil Procedure §§ 704.710 - 704.880.

At the debtor's first 11 U.S.C. § 341 meeting of creditors, the chapter 7 trustee (appellee) questioned the debtor at length about the disposition of the proceeds from the sale of his residence:

> Trustee: So you got $122,000 from the title company you said you cashed that you didn't deposit that in a bank account. Is that correct?
>
> Debtor: That is correct
>
> Trustee: You did not deposit any of those funds into a bank account?
>
> Debtor: No I did not
>
> Trustee: And why not?
>
> Debtor: Why not? I was worried this man might come steal my money
>
> Trustee: O.K. and by this man you are talking about?

3

|   |   |
|---|---|
| 1 | Debtor: Glenn Smith |
| 2 | Trustee: O.K. |

Because the debtor received approximately $122,000 in sale proceeds but only scheduled $48,000 on his bankruptcy petition, the trustee informed the debtor that it was the debtor's responsibility to explain and account for approximately $74,000 in sale proceeds that he did not schedule.

When the trustee questioned the debtor about the amount of sale proceeds that the debtor had spent since escrow had closed in July 2005, the debtor told the trustee that it had been spent on legal fees, living expenses, child care, vehicles, home furnishings, and the like.

On January 17, 2006, which was just over six months after the July 12, 2005, close of escrow on the sale of the debtor's residence, the trustee filed an Objection to Claim of Exemption, followed by a Motion to Compel Turnover and Accounting of Property of the Estate. The trustee argued that the debtor's homestead exemption lapsed on January 12, 2006, unless the funds had been reinvested in a new homestead.

The debtor filed an opposition on February 14, 2006, and filed a declaration stating that on January 11, 2006, he tendered a $48,000 cashier's check to his mother, Joan Scoggins, for a 4.5% interest in her home. His mother, in return, had executed and recorded a grant deed in favor of the debtor on January 12, 2006.

Based on the information provided by the debtor in his declaration, the trustee dropped his Objection to Claim of Exemption.

4

On March 9, 2006, trustee filed an adversary proceeding against the debtor objecting to his discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5). The trustee alleged that the debtor's pre-petition disposition of the sale proceeds into cashier's checks and money orders was a transfer or concealment of the debtor's property done with the intent to "hinder, delay, or defraud" his creditors.

Several months later, the trustee discovered that on January 13, 2006, the debtor had signed and notarized a quitclaim deed in favor of his mother that reversed the transaction the debtor and his mother had entered into the previous day (January 12). The trustee also discovered that the debtor's mother never deposited the $48,000 cashier's check given to her by the debtor in exchange for an interest in her property. Instead, the debtor's mother returned the original cashier's check to the debtor.

The debtor did not disclose the latter series of events between himself and his mother in his February 14, 2006 declaration alleging the re-establishment of his homestead.

On March 15, 2006, the debtor redeemed the $48,000 cashier's check at the bank and used the cash for living expenses. Several days later, the deed reversing the transaction was recorded with the county land records.

Armed with this newly discovered information, the trustee filed a first amended adversary complaint on November 21, 2006, seeking to deny the debtor's discharge on the additional ground that the transaction between the debtor and his mother was a "sham" and a fraudulent concealment of property of the estate. The trustee also sought to compel turnover of the $48,000.

5

Trial was held on November 29, 2006. On December 4, 2006, the bankruptcy court entered its memorandum decision denying the debtor's discharge pursuant to § 727(a)(2)(A) and ordering the debtor to turnover the $48,000 in sale proceeds to the trustee. Final judgment was entered on December 5, 2006.

This appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1) Whether the bankruptcy court erred when it denied the debtor's discharge pursuant to § 727(a)(2)(A).

2) Whether the bankruptcy court erred when it ordered the debtor to turn over to the trustee the $48,000 in sale proceeds.

## STANDARD OF REVIEW

In bankruptcy discharge appeals, we review findings of fact for clear error, conclusions of law de novo, and also apply de novo review to "mixed questions" of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. Murray v. Bammer (In re Bammer), 131 F.3d 788, 791-92 (9th Cir. 1997) (en banc), overruling, e.g., Finalco v. Roosevelt (In re Roosevelt), 87 F.3d 311, 314, as amended, 98 F.3d 1169 (9th Cir. 1996) (§ 727 reviewed for abuse of discretion), and Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400, 1404-05 (9th Cir. 1996) (same);

6

First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986) (§ 727 finding of transfer of property with intent to defraud is finding of fact).

Whether a debtor harbors actual intent to hinder, or delay, or defraud a creditor is a question of fact reviewed for clear error. Emmett Valley Assoc. v. Woodfield (In re Woodfield), 978 F.2d 516, 518 (9th Cir. 1992); Searles v. Riley (In re Searles), 317 B.R. 368, 379 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006). Intent may be inferred from circumstances surrounding the transaction. Woodfield, 978 F.2d at 518.

Under the "clear error" standard, we accept findings of fact unless the findings leave the "definite and firm conviction that a mistake has been committed" by the trial judge. Latman v. Burdette, 366 F.3d 774, 781 (9th Cir. 2004).

DISCUSSION

I

The trustee sought denial of the debtor's discharge pursuant to § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5). The burden of proof on an objection to discharge under § 727(a)(2) is preponderance of evidence. Grogan v. Garner, 498 U.S. 279, 289 (1991); Landsdowne v. Cox (In re Cox), 41 F.3d 1294, 1297 (9th Cir. 1994); Wolkowitz v. Beverly (In re Beverly), slip op. at 36 (9th Cir. BAP July 24, 2007); Searles, 317 B.R. at 376; 6 COLLIER ON BANKRUPTCY ¶ 522.08[4] (Henry J. Sommer & Alan N. Resnick eds. 15th ed. rev. 2006) ("COLLIER 15th ed."). The bankruptcy court found that the debtor kept assets in cash (cashier's checks and money orders) in order to hinder his creditors and denied the

7

debtor's discharge pursuant to § 727(a)(2)(A).

Section 727(a)(2)(A) provides,

> (a) The court shall grant the debtor a discharge, unless -
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . .
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

Discharge may be denied under § 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud creditors. Adeeb, 787 F.2d at 1342-43; Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751, 753 (9th Cir. 1985). Constructive fraudulent intent can not be the basis for the denial of discharge. Adeeb, 787 F.2d at 1343.

It is sufficient under the plain language of § 727(a)(2)(A) to deny discharge upon a showing of intent to hinder or delay or defraud creditors. Searles, 317 B.R. at 379. In other words, intent to defraud need not be shown because intent to hinder or to delay is sufficient.

Here, it is undisputed that the subject transaction involved property of the debtor and that it occurred within one year of the debtor filing bankruptcy. The debtor argues that he did not harbor the requisite intent and did not transfer or conceal his property.

The bankruptcy court found that the debtor acted with actual intent to hinder his creditors when he kept the proceeds from the

8

sale of his residence in the form of cashier's checks and money orders.

The court based its decision on the debtor's admission at his meeting of creditors that he did not deposit the sale proceeds into a bank account because he believed that Low's attorney (Glenn Smith) was going to "steal" his money.

At trial, the debtor was questioned about the statement he made at his meeting of creditors:

> [Trustee's attorney]: [Y]ou didn't really think Glenn Smith was going to point a gun at you and hold you up in a robbery; did you?
>
> [Debtor]: No. What I thought he was going to do was lie to the courts –
>
> [Trustee's attorney]: Okay. Thank you. And you didn't think –
>
> [Debtor]: And that's what he did. He filed a bunch of lies. He lied to a lot of people.

This evidence supports the trial court's inference (which was based on a credibility determination) regarding the debtor's intent. We perceive no clear error. Moreover, we agree with the bankruptcy court that the debtor acted with actual intent to hinder the collection efforts of his creditors, specifically the efforts of Low.

We also agree that the debtor's admitted actions in using the sale proceeds to acquire money orders and cashier's checks in order to prevent the proceeds from being "stolen" by Low's

//
//
//

9

attorney was an act of concealment.[1]

The bankruptcy court did not err when it denied the debtor's discharge pursuant to § 727(a)(2)(A).

II

On the debtor's schedule B, he stated that he had $48,000 "cash on hand" as proceeds from the sale of his residence. Because the sale of the debtor's residence occurred approximately four months before he filed bankruptcy, the debtor sought to exempt those sale proceeds.

Under California law, the proceeds of a homestead sale remain exempt for a period of six months after the sale. Cal. Civ. Proc. Code §§ 704.720(b), 704.960(a). When the six month period expires, the exempt status of the sale proceeds automatically dissolves, even if the six month period expires <u>after</u> the filing of the bankruptcy petition. <u>England v. Golden (In re Golden)</u>, 789 F.2d 698, 699 (9th Cir. 1986); <u>Konnoff</u>, 356 B.R. at 208; <u>Gaughan v. Smith (In re Smith)</u>, 342 B.R. 801, 808-09 (9th Cir. BAP 2006).

Thus, to keep their exempt status, the proceeds must be reinvested into another homestead within six months of the sale. If not timely reinvested, the sale proceeds become property of the bankruptcy state.

---

[1]Black's Law Dictionary defines "concealment" as follows:

**concealment**, *n*. **1**. The act of refraining from disclosure; esp., an act by which one prevents or hinders the discovery of something. **2**. The act of removing from sight or notice; hiding. . . .

Black's Law Dictionary 282 (7th ed. 1999).

In this case, because escrow closed on the sale of the debtor's residence on July 12, 2005, under California law, the debtor had until January 12, 2006, to reinvest the proceeds in a new homestead. On January 17, 2006, the trustee filed an objection to debtor's claim of exemption, and, pursuant to Golden, sought turnover of the $48,000 in sale proceeds the debtor claimed were exempt.

In response to trustee's motions, the debtor filed a declaration stating that he had tendered to his mother a $48,000 cashier's check in exchange for a 4.5% interest in her residence. The debtor attached to his declaration a copy of the recorded grant deed that had been executed by his mother in favor of the debtor. The deed had been recorded with the county recorder's office on January 12, 2006.

Based on the debtor's declaration, the trustee believed that the debtor had timely reinvested the sale proceeds and he withdrew his objection to claim of exemption.

However, unbeknownst to the trustee, on January 13, 2006 (one day *after* the recording of the first deed), the debtor signed and notarized a quitclaim deed back to his mother reversing the transaction. The debtor's mother then returned the original cashier's check to the debtor. None of this information was provided to the court or to the trustee by the debtor in his declaration that was filed one month after these later events took place.

At trial, the debtor testified that on March 15, 2006, he and his mother went to the bank and he "redeemed" the cashier's check and "lived off" the proceeds. The deed reversing the

transaction was recorded with the Sonoma County Recorder's Office on March 23, 2006.

When the trustee discovered that the transaction between the debtor and his mother had been reversed the next day, he filed a first amended complaint in the pending adversary proceeding to add a claim for denial of discharge pursuant to § 727(a)(2)(B) and for turnover of the $48,000 pursuant to 11 U.S.C. § 542.

After trial, the bankruptcy court concluded that the debtor's purchase of a new homestead was a "sham" and therefore, under Golden, the sale proceeds were property of the estate and should be turned over to the trustee. We agree.

As it is a factual finding, the bankruptcy court's determination that the transaction the debtor entered into with his mother was a "sham transaction" done with the intent to conceal property of the estate is reviewed for clear error. Atkins v. Fiberglass Representatives, Inc. (In re Atkins), 134 B.R. 936, 940 (9th Cir. BAP 1992) ("sham transaction").

Even though the debtor purported to reinvest the $48,000 on the eve of the expiration of the statutory six month limitations period, what he in fact did was retain a secret beneficial interest in those legally transferred proceeds in an effort to conceal those proceeds from the trustee and his creditors. See Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1241 (9th Cir. 1997) (denial of discharge based on continuing concealment doctrine.)

The debtor and his mother reversed the transaction one day after its making, but did not make it known publicly until two months later when the second deed was recorded.

12

Case: 06-01057    Doc# 54    Filed: 08/15/07    Entered: 08/16/07 13:59:14    Page 12 of 13

The record in this case contains ample evidence to support the court's conclusion that the transaction between the debtor and his mother was a "sham" and therefore, the bankruptcy court correctly concluded that because the proceeds were not genuinely reinvested in a new homestead within six months, the proceeds became property of the bankruptcy estate on January 12, 2006, and were subject to turnover.

CONCLUSION

Because there is sufficient evidence in the record to support the court's finding regarding the debtor's actual intent to hinder creditors by concealing his property when he converted the sale proceeds into money orders and cashier's checks, all elements of § 727(a)(2)(A) are satisfied and the debtor's discharge was properly denied.

Further, because the transaction between the debtor and his mother was a "sham" and because the sale proceeds were not reinvested in a new homestead within the six month limitations period, under Golden the proceeds were property of the bankruptcy estate subject to administration. The bankruptcy court did not err when it ordered debtor to turnover the $48,000. AFFIRMED.